CLERK U S. DISTRICT COURT

OCT 2 3 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RODOLFO SALAS,

         Petitioner,

   v.

L. WATSON-POWERS, Warden,

         Respondent.

)
)
)
)
)
)
)
)
)
)
)

NO. CV 08-2866-PA(E)

ORDER ADOPTING FINDINGS,

CONCLUSIONS AND RECOMMENDATIONS OF

UNITED STATES MAGISTRATE JUDGE

    Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge.  The Court approves and adopts the Magistrate Judge's Report and Recommendation.

    IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

///

///

///

///

1   IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2   the Magistrate Judge's Report and Recommendation and the Judgment

3   herein by United States mail on Petitioner and counsel for Respondent.

4

5   LET JUDGMENT BE ENTERED ACCORDINGLY.

6

7   DATED:   _October 22_____ , 2008.

8

9

10   _____

11   PERCY ANDERSON
     UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RODOLFO SALAS,
             Petitioner,

    v.

L. WATSON-POWERS, Warden,

             Respondent.

)  NO. CV 08-2866-PA(E)
)
)
)
)  REPORT AND RECOMMENDATION OF
)
)  UNITED STATES MAGISTRATE JUDGE
)
)
)
)

    This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

    Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on May 1, 2008.  Respondent filed an Answer and lodged certain documents on August 8, 2008.  Petitioner filed a "Denial and Exception to the Return, etc." on August 20, 2008.

1 | **BACKGROUND**

In 1989, Petitioner received a sentence of 17 years to life, with the possibility of parole, for second degree murder and for personally using a firearm in the commission of the offense (Lodgment 1). In 2005, the Board of Parole Hearings ("the Board") found Petitioner unsuitable for parole (Lodgment 2). In making this finding, the Board cited, <u>inter alia</u>, the commitment offense (shooting one of Petitioner's cousins to death and gravely injuring another cousin by shooting him in the groin), an unstable social history (dropping out of school and coming to the United States illegally), a history of alcohol abuse, and a lack of insight into Petitioner's culpability for his crime (Petitioner told the Board he was not even armed at the time of the shootings).[1]  <u>Id.</u>  The Board denied parole for a three-year period.  <u>Id.</u>

In 2006, Petitioner filed a petition for writ of habeas corpus in the California Superior Court (Lodgment 3). On June 22, 2007, the Superior Court denied this petition in a two-page order, reasoning that "some evidence" supported the Board's finding that Petitioner was unsuitable for parole (Lodgment 4). The Superior Court stated, in pertinent part:

///

///

> The Board based its decision on several factors,

---

[1] In the "Denial of Habeas Corpus, etc." appended to the Petition, Petitioner now inconsistently admits "I Rodolfo Salas, shot and killed [the victim]" ("Denial of Habeas Corpus, etc." at II).

2

1  including the commitment offense.

2

3      The Court finds that there is some evidence to support

4  the [Board's] finding that the commitment offense was

5  especially heinous and atrocious because multiple victims

6  were attacked, injured or killed in the same incident (Cal.

7  Code Regs., tit. 15, § 2402, subd. (c)(1)(A)).  Petitioner

8  and his brother killed one of the victims.  They also

9  severely injured another who was shot in the groin.

10  Although the third victim was not physically harmed, he was

11  attacked when Petitioner and his brother fired their weapons

12  at him.

13

14      The Board based their three-year denial on the fact

15  that [P]etitioner needs more self-help to better understand

16  the nature and magnitude of the offense.  Cal. Code Regs.,

17  tit. 15, § 2402, subd. (d)(3)).  Because [P]etitioner

18  continues to assert that he did not have a gun, despite eye-

19  witness and forensic evidence to the contrary, it is not

20  clear that he has gained insight into his behavior or feels

21  remorse for his actions.  His lack of insight is some

22  evidence that [P]etitioner continues to pose a risk of

23  danger to society.  Id.

24

25  Later in 2007, Petitioner filed in the California Court of Appeal

26  a document entitled "Denial of Habeas Corpus from Superior Court,

27  etc." (Lodgment 5).  The California Court of Appeal treated this

28  document as a petition for writ of habeas corpus, which the Court

3

1    summarily denied on August 31, 2007 (Lodgment 6).  Petitioner then

2    filed a petition for writ of habeas corpus in the California Supreme

3    Court (Lodgment 7).  The California Supreme Court summarily denied

4    this petition on March 19, 2008 (Lodgment 8).

5

6                              STANDARD OF REVIEW

7

8        A federal court may not grant an application for writ of habeas

9    corpus on behalf of a person in state custody with respect to any

10   claim that was adjudicated on the merits in state court proceedings

11   unless the adjudication of the claim: (1) "resulted in a decision that

12   was contrary to, or involved an unreasonable application of, clearly

13   established Federal law, as determined by the Supreme Court of the

14   United States"; or (2) "resulted in a decision that was based on an

15   unreasonable determination of the facts in light of the evidence

16   presented in the State court proceeding."  28 U.S.C. § 2254(d);

17   Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537

18   U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

19

20       "Clearly established Federal law" refers to the governing legal

21   principle or principles set forth by the Supreme Court at the time the

22   state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

23   (2003).  A state court's decision is "contrary to" clearly established

24   Federal law if: (1) it applies a rule that contradicts governing

25   Supreme Court law; or (2) it "confronts a set of facts . . .

26   materially indistinguishable" from a decision of the Supreme Court but

27   reaches a different result.  See Early v. Packer, 537 U.S. at 8

28   (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

                                     4

1    Under the "unreasonable application prong" of section 2254(d)(1),

2 a federal court may grant habeas relief "based on the application of a

3 governing legal principle to a set of facts different from those of

4 the case in which the principle was announced."  Lockyer v. Andrade,

5 538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537

6 U.S. at 24-26 (state court decision "involves an unreasonable

7 application" of clearly established federal law if it identifies the

8 correct governing Supreme Court law but unreasonably applies the law

9 to the facts).  A state court's decision "involves an unreasonable

10 application of [Supreme Court] precedent if the state court either

11 unreasonably extends a legal principle from [Supreme Court] precedent

12 to a new context where it should not apply, or unreasonably refuses to

13 extend that principle to a new context where it should apply."

14 Williams v. Taylor, 529 U.S. at 407 (citation omitted).

15

16    "In order for a federal court to find a state court's application

17 of [Supreme Court] precedent 'unreasonable,' the state court's

18 decision must have been more than incorrect or erroneous."  Wiggins v.

19 Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

20 court's application must have been 'objectively unreasonable.'"  Id.

21 at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

22 1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003).  In applying these

23 standards, this Court looks to the last reasoned state court decision,

24 here the decision of the California Superior Court.  See Delgadillo v.

25 Woodford, 527 F.3d 919, 925 (9th Cir. 2008).

26 ///

27

28                              **DISCUSSION**

1

2        For the reasons discussed below, the Court should deny and

3   dismiss the Petition with prejudice.

4

5   I.    **Governing Legal Standards**

6

7        "There is no constitutional or inherent right of a convicted

8   person to be conditionally released before the expiration of a

9   valid sentence."   Greenholtz v. Inmates of Nebraska Penal and

10  Correctional Complex, 442 U.S. 1, 7 (1979) ("Greenholtz").   In some

11  instances, however, states may confer a liberty interest in parole

12  under state law.   Id. at 12.   Section 3041(b) of the California Penal

13  Code provides, in pertinent part:

14

15       The panel or the board . . . shall set a release date unless

16       it determines that the gravity of the current convicted

17       offense or offenses, or the timing and gravity of current or

18       past convicted offense or offenses, is such that

19       consideration of the public safety requires a more lengthy

20       period of incarceration for this individual, and that a

21       parole date, therefore, cannot be fixed at this meeting.

22

23       The Ninth Circuit has held that section 3041(b) confers a

24  constitutionally protected liberty interest in parole.   Irons v.

25  Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) ("Irons"); Sass v. Calif.

26  Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006) ("Sass");

27

28

1  <u>Biggs v. Terhune</u>, 334 F.3d 910, 914-15 (9th Cir. 2003) ("<u>Biggs</u>").[2]

2

3      Due Process requires that there exist "some evidence" to support

4  a parole decision.  <u>Irons</u>, 505 F.3d at 851 ("At the time that Irons'

5  state habeas petition [challenging a 2001 denial of parole] was before

6  the state courts, the Supreme Court had clearly established that a

7  parole board's decision deprives a prisoner of due process . . . if

8  the board's decision is not supported by 'some evidence in the

9  record.'"); <u>see also</u> <u>Sass</u>, 461 F.3d at 1128-29 ("some evidence"

10  standard is "clearly established in the parole context"); <u>Powell v.</u>

11  <u>Gomez</u>, 33 F.3d 39, 40 (9th Cir. 1994); <u>Perveler v. Estelle</u>, 974 F.2d

12  1132, 1134 (9th Cir. 1992); <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d

13  1389, 1390 (9th Cir. 1987) (citing <u>Superintendent, Massachusetts</u>

14  <u>Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445, 455 (1985)).

15  "To determine whether the some evidence standard is met 'does not

16  require examination of the entire record, independent assessment of

17  the credibility of witnesses, or weighing of the evidence.'"  <u>Sass</u>,

18  461 F.3d at 1128 (quoting <u>Superintendent, Massachusetts Correctional</u>

19  <u>Institution, Walpole v. Hill</u>, 472 U.S. at 455-56).  The "some

20  evidence" standard is "minimal," and "'the relevant question is

21  whether there is <u>any</u> evidence in the record that could support the

22  conclusion reached by the [Board].'"  <u>Sass</u>, 461 F.3d at 1128 (quoting

23

24       [2]    This Court has no authority to disregard the Ninth

25  Circuit's clear holdings, in <u>Biggs</u>, <u>Sass</u> and <u>Irons</u>, that an
   inmate has a liberty interest in parole.  <u>See</u> <u>Hart v. Massanari</u>,

26  266 F.3d 1155, 1170 (9th Cir. 2001) (district judge may not
   "disagree with his learned colleagues on his own court of appeals

27  who have ruled on a controlling legal issue"); <u>Zuniga v. United</u>

28  <u>Can Co.</u>, 812 F.2d 443, 450 (9th Cir. 1987) ("[d]istrict courts
   are, of course, bound by the law of their own circuit").

1 | <u>Superintendent, Massachusetts Correctional Institution, Walpole v.</u>

2 | <u>Hill</u>, 472 U.S. at 455-56; emphasis added).  Evidence that is "meager"

3 | or indirect still may support an agency decision under the "some

4 | evidence" standard.  <u>See</u> <u>Superintendent v. Hill</u>, 472 U.S. 445, 457

5 | (1985).[3]

6 |

7 |   State authorities' discretion in parole matters is "great" and

8 | "involves the deliberate assessment of a wide variety of

9 | individualized factors on a case-by-case basis, and the striking of a

10 | balance between the interests of the inmate and the public."  <u>In re</u>

11 | <u>Powell</u>, 45 Cal. 3d 894, 902, 248 Cal. Rptr. 431, 755 P.2d 881 (1988)

12 | (internal quotations and citation omitted); <u>see also</u> <u>Biggs</u>, 334 F.3d

13 | at 915 (California law allows the state authorities "to consider a

14 | myriad of factors when weighing the decision of granting or denying

15 | parole"); <u>Glauner v. Miller</u>, 184 F.3d 1053, 1055 (9th Cir. 1999)

16 | (state authorities have "broad discretion" to determine whether "the

17 | necessary [statutory] prerequisites are met") (quoting <u>Board of</u>

18 | <u>Pardons v. Allen</u>, 482 U.S. 369, 376 (1987)).

19 |

20 |   Under applicable state regulations, "a life prisoner shall be

21 | found unsuitable for and denied parole if in the judgment of the

22 | [Board] the prisoner will pose an unreasonable risk of danger to

23 | ――――――――――

24 |   [3] Respondent's contention that the "some evidence"
standard does not apply is without merit.  <u>See</u> <u>Irons</u>, 505 F.3d at

25 | 851; <u>Sass</u>, 461 F.3d at 1128; <u>see also</u> <u>Washington v. Marshall</u>, 272
Fed. App'x 634, 635 (9th Cir. 2008) (argument that "some

26 | evidence" standard did not apply to parole decisions "foreclosed"
by <u>McQuillion v. Duncan</u>, 306 F.3d 895, 904 (9th Cir. 2002)

27 | <u>supra</u>); <u>Chan v. Kane</u>, 272 Fed. App'x 632, 633 (9th Cir. 2008)
(deeming argument that "some evidence" standard did not apply to

28 | parole decisions "foreclosed" by <u>Biggs</u>).

1   society if released from prison." Cal. Code Regs. tit. 15, § 2402(a).

2   In determining suitability for parole, the Board may consider, <u>inter</u>

3   <u>alia</u>, "the circumstances of the prisoner's social history; past and

4   present mental state; past criminal history, including involvement in

5   other criminal misconduct which is reliably documented; the base and

6   other commitment offenses, including behavior before, during and after

7   the crime; past and present attitude toward the crime; any conditions

8   of treatment or control, including the use of special conditions under

9   which the prisoner may safely be released to the community; and any

10  other information which bears on the prisoner's suitability for

11  release." <u>See</u> Cal. Code Regs. tit. 15, § 2402(b).

12

13      State prison regulations describe certain circumstances tending

14  to show unsuitability for release, described as "general guidelines,"

15  but also state that the importance of any circumstances or combination

16  of circumstances in a particular case is left to the judgment of the

17  Board.  Cal. Code Regs. tit. 15, §2402(c).  The regulations provide:

18

19          Circumstances tending to show unsuitability include:

20

21          (1) Commitment Offense.  The prisoner committed the offense

22          in an especially heinous, atrocious or cruel manner.  The factors

23          to be considered include:

24

25              (A) Multiple victims were attacked, injured or killed

26              in the same or separate incidents.

27  ///

28  ///

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

///

1          (6)  Institutional Behavior.  The prisoner has engaged in

2     serious misconduct in prison or jail.

3

4  Cal. Code Regs. tit. 15, § 2402(c).

5

6     Circumstances tending to show suitability for parole include:

7  (1) the absence of a juvenile record; (2) a stable social history;

8  (3) signs of remorse; (4) a lack of any significant history of violent

9  crime; (5) the prisoner's age; (6) realistic parole plans; and

10  (7) institutional activities indicating an enhanced ability to

11  function within the law upon release.  Cal. Code Regs. tit. 15,

12  § 2402(d).

13

14     Upon a finding of suitability, the Board sets a "base term"

15  established solely on the gravity of the base crime, using a matrix of

16  base terms set forth in California Code of Regulations section 2403.

17  See Cal. Code Regs. tit. 15, § 2403(a).

18

19  II.  **The Conclusion that "Some Evidence" Supports the Board's**

20       **Determination of Unsuitability is Neither Contrary to Nor an**

21       **Unreasonable Application of Clearly Established United States**

22       **Supreme Court Law.**

23

24     As indicated above, the California Superior Court decided that

25  "some evidence" supported the Board's finding of parole unsuitability.

26  This decision was neither contrary to nor an unreasonable application

27  of clearly established United States Supreme Court law.

28  ///

1    Under the "some evidence" test, the issue is not whether the

2    evidence supported any particular factor regarding parole suitability,

3    but rather whether "some evidence" indicates the prisoner's release

4    unreasonably would endanger public safety.  See Castro v. Adams, 2008

5    WL 2490401, at *5 (E.D. Cal. June 16, 2008), adopted, 2008 WL 3839105

6    (E.D. Cal. Aug. 15, 2008); Hudson v. Curry, 2008 WL 1766773, at *4

7    (N.D. Cal. Apr. 15, 2008); In re Hyde, 154 Cal. App. 4th 1200, 1213,

8    65 Cal. Rptr. 3d 162 (2007); see also In re Sandra Davis Lawrence,

9    2008 WL 3863606, at *17 (9th Cir. Aug. 21, 2008) ("Lawrence").[4]  The

10   evidence before the Board provided "some evidence" that Petitioner's

11   release unreasonably would endanger public safety.  See Rose v. Kane,

12   270 Fed. App'x 610, 611-12 (9th Cir. 2008) (commitment offense,

13   inmate's lack of insight and demeanor at hearing sufficient); Sass,

14   461 F.3d at 1129 (gravity of commitment offenses including second

15   degree murder, plus prior DUI convictions, sufficient); Rosas v.

16   Nielsen, 428 F.3d 1229, 1232-33 (9th Cir. 2005) (circumstances of

17   commitment offense along with psychiatric reports showing petitioner

18   had failed to complete necessary programming while in prison

19   sufficient); Cruz v. Warden, 2008 WL 1901343, at *5 (E.D. Cal.

20

21            [4]    In Lawrence, the California Supreme Court recently
22   concluded that "the aggravated nature of the crime does not in
     and of itself provide some evidence of current dangerousness to
23   the public unless the record also establishes that something in
     the prisoner's pre- or post-incarceration history, or his or her
24   current demeanor or mental state, indicates that the implications
     regarding the prisoner's dangerousness that derive from his or
25   her commission of the commitment offense remain probative to the
     statutory determination of a continuing threat to public safety."
26   Lawrence at *18.  The Lawrence Court's conclusion has no impact
     on the present case, if only because the Board relied on
27   Petitioner's current mental state, in conjunction with the
     aggravated nature of the crime, in finding Petitioner unsuitable
28   for parole.

1 | Apr. 28, 2008), adopted, 2008 WL 2312770 (E.D. Cal. June 5, 2008)

2 | (reasonable to deny parole where "the disparity between the facts as

3 | determined at trial and Petitioner's own rendition amount to a lack of

4 | insight into his own behavior and his tendency to minimize his

5 | responsibility"); Brummett v. Kane, 2008 WL 859855, at *13-14 (N.D.

6 | Cal. Mar. 28, 2008) (gravity of commitment offenses including second

7 | degree murder, gross vehicular manslaughter and driving with a license

8 | suspended for prior DUI convictions, and continued need for self-help

9 | or therapy and programming sufficient, despite inmate's lack of

10 | disciplinary history, positive programming and participation in

11 | alcohol and drug abuse programs, and despite psychologist's report

12 | stating inmate's potential for violence if released would be no

13 | greater than that of the average citizen); Singh v. Curry, 2007 WL

14 | 3256246, at *4 (N.D. Cal. Nov. 5, 2007) ("The panel's legitimate

15 | concern with petitioner's lack of insight into the horrific murder of

16 | his wife constitutes some evidence under [Superintendent v.]Hill").

17 |

18 | Petitioner may suggest that the Board should have weighed more

19 | heavily arguably positive factors.  This Court cannot re-weigh the

20 | factors supporting parole suitability and the factors supporting

21 | parole unsuitability.  See Chichil v. Kane, 255 Fed. App'x 194, 194

22 | (9th Cir. 2007) ("the 'some evidence' standard does not allow us to

23 | reweigh the evidence before the Board"); Crawley v. Knowles, 235 Fed.

24 | App'x 563, 564 (9th Cir. 2007) ("The 'some evidence' standard does not

25 | allow us to entertain Crawley's contentions regarding how the Board

26 | evaluated the evidence it had before it when it made its suitability

27 | determination. [citation]"."); Powell v. Gomez, 33 F.3d 39, 42 (9th

28 | Cir. 1994); Countryman v. Stokes, 2008 WL 1335934, at *11 (C.D. Cal.

1  Apr. 8, 2008); <u>Collier v. Dexter</u>, 2008 WL 816688, at *12 (C.D. Cal.

2  Mar. 25, 2008).  Moreover, even if the Board made some insupportable

3  findings, the Court nevertheless must deny habeas relief where, as

4  here, there exists "some evidence" supporting the Board's finding of

5  unsuitability.  <u>See Biggs</u>, 334 F.3d at 916.[5]

6

7      To the extent Petitioner asserts the Board failed to give him any

8  individualized consideration, the record belies such assertion.  The

9  Board gave Petitioner individualized consideration, but simply

10  determined that the evidence tending to show unsuitability outweighed

11  the evidence tending to show suitability.  <u>See Woods v. Marshall</u>, 183

12  Fed. App'x 620, 622 (9th Cir. 2006) (rejecting argument that Board

13  failed to provide inmate "individualized consideration," where record

14  showed Board "considered Woods' specific offense, the therapy programs

15  in which he had participated, his mental health evaluation, and the

16  opposition of the district attorney").  Again, it is not for this

17  Court to re-weigh the evidence before the Board.  <u>See Crawley v.</u>

18  <u>Knowles</u>, 235 Fed. App'x at 564; <u>Chichil v. Kane</u>, 255 Fed. App'x at

19  194; <u>Powell v. Gomez</u>, 33 F.3d at 42.

20

21      Petitioner argues the Board erred by assertedly relying solely on

22  the commitment offense.  In dicta, the Ninth Circuit stated:

23

24      <u>Over time</u>, however, <u>should Biggs continue</u> to demonstrate

25      exemplary behavior and evidence of rehabilitation, denying

26  _____

27      [5]    To the extent Petitioner contends the Board violated
   state law or regulations, Petitioner is not entitled to habeas
28  relief.  <u>See Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

1    him a parole date simply because of the nature of Biggs'

2    offense and prior conduct would raise serious questions

3    involving his liberty interest in parole. . . .

4

5         . . .  A continued reliance in the future on an

6    unchanging factor, the circumstance of the offense and

7    conduct prior to imprisonment, runs contrary to the

8    rehabilitative goals espoused by the prison system and could

9    result in a due process violation.

10

11   Biggs, 334 F.3d at 916-17 (emphasis added).

12

13        As previously indicated, however, the Board did not rely solely

14   on the nature of the commitment offense to deny parole in the present

15   case.  Therefore, the Biggs dicta would be inapplicable even if that

16   dicta were otherwise persuasive or authoritative.  See Withers v.

17   Finn, 2007 WL 2729078, at *6 (E.D. Cal. Sept. 18, 2007), adopted, 2007

18   WL 3293378 (E.D. Cal. Jan. 8, 2008) (distinguishing Biggs where denial

19   of parole was based in part on petitioner's inadequate parole plans,

20   and thus was not based "solely on immutable factors"; original

21   emphasis); Rose v. Kane, 2006 WL 3251735, at *11 (N.D. Cal. Nov. 2,

22   2006), aff'd, 270 Fed. App'x 610 (9th Cir. 2008) (Biggs dicta

23   inapplicable where the Board did not base denial solely on gravity of

24   commitment offense, but also relied on fact that petitioner needed

25   more self-help and therapy).

26

27        For the foregoing reasons, the state courts' rejection of

28   Petitioner's challenge to the sufficiency of the evidence was not

1  contrary to, or an unreasonable application of, any clearly

2  established Federal law as determined by the United States Supreme

3  Court.  See 28 U.S.C. § 2254(d).

4

5  **III.  Petitioner's Various Other Arguments Fail to Merit Habeas**

6      **Relief.**[6]

7

8      Petitioner's reference to the matrix of base terms set in the

9  California Code of Regulations and principles of proportionality is of

10 no moment.  The Board is not required to consider the matrix, or

11 principles of proportionality, until after the Board deems an inmate

12 suitable for parole.  See Cal. Code Regs., tit. 15, § 2403(a); In re

13 Dannenberg, 34 Cal. 4th 1061, 1091, 23 Cal. Rptr. 3d 417, 104 P.3d

14 783, cert. denied, 546 U.S. 844 (2005); see also Sass, 461 F.3d at

15 1132 ("The matrix is intended to ensure sentencing uniformity among

16 those who commit similar crimes. [citation].  Such considerations are,

17 of course, inapplicable in the case of prisoners deemed unsuitable for

18 parole. [citation]."); Ramos v. Kane, 2007 WL 1232052, at *4 (N.D.

19 Cal. Apr. 26, 2007) ("going straight to the matrix to calculate the

20 sentence puts the cart before the horse because it ignores critical

21 language in the relevant statute and regulations that requires the

22 prisoner first to be found suitable for parole").  "Nothing in the

23 statute states or suggests that the Board must evaluate the case under

24 standards of term uniformity before exercising its authority to deny a

25 parole date on grounds the particular offender's criminality presents

26 _____

27      [6]    The Court has considered and rejected each of
   Petitioner's arguments, and discusses Petitioner's principal
28 additional arguments herein.

16

1  a *continuing public danger*." <u>Sass</u>, 461 F.3d at 1128 (quoting

2  <u>Dannenberg</u>, 34 Cal. 4th at 1070; brackets omitted; original emphasis).

3  Because the Board did not find Petitioner suitable for parole, it was

4  not required to use the matrix, or principles of proportionality, to

5  determine a base term.  <u>See</u> <u>Ramos v. Kane</u>, 2007 WL 1232052, at *4;

6  <u>Smith v. Finn</u>, 2007 WL 214597, at *8 (E.D. Cal. Jan. 25, 2007),

7  <u>adopted</u>, 2007 WL 3151673 (E.D. Cal. Oct. 26, 2007); <u>Fernandez v. Kane</u>,

8  2006 WL 3041083, at *5, 9 (N.D. Cal. Oct. 24, 2006).

9

10      Petitioner appears to argue that the applicable regulations and

11  the applicable state law jurisprudence are unconstitutionally vague.

12  This argument must be rejected.

13

14      Unconstitutional vagueness may exist where the wording "fails to

15  give a person of ordinary intelligence fair notice that his conduct is

16  forbidden." <u>United States v. Batchelder</u>, 442 U.S. 114, 123 (1979)

17  (citations and quotations omitted); <u>see also</u> <u>United States v. Johnson</u>,

18  130 F.3d 1352, 1354 (9th Cir. 1997); <u>United States v. Gallagher</u>, 99

19  F.3d 329, 334 (9th Cir. 1996), <u>cert. denied</u>, 520 U.S. 1129 (1997).

20  Alleged vagueness should be judged in light of the conduct involved.

21  <u>See, e.g.</u>, <u>United States v. Powell</u>, 423 U.S. 87, 92-93 (1975).

22  Petitioner must show that the standards are vague as applied to him,

23  for "[u]nless First Amendment freedoms are implicated, a vagueness

24  challenge may not rest on arguments that the law is vague in its

25  hypothetical applications, but must show that the law is vague as

26  applied to the facts of the case at hand." <u>United States v. Johnson</u>,

27  130 F.3d at 1354 (<u>citing</u> <u>Chapman v. United States</u>, 500 U.S. 453, 467

28  (1991)); <u>see also</u> <u>United States v. Gallagher</u>, 99 F.3d at 334.  "The

1   Due Process Clause does not require the same precision in the drafting

2   of parole release statutes as is required in the drafting of penal

3   laws." <u>Hess v. Board of Parole and Post-Prison Supervision</u>, 514 F.3d

4   909, 914 (9th Cir.), <u>cert. denied</u>, 128 S. Ct. 2972 (2008).

5

6        Contrary to Petitioner's suggestion, the applicable standards

7   gave a person of ordinary intelligence fair notice.  <u>See</u> <u>Arave v.</u>

8   <u>Creech</u>, 507 U.S. 463, 471-73 (1993) (upholding against vagueness

9   challenge the phrase "cold-blooded, pitiless"); <u>Greenholtz v. Inmates</u>

10  <u>of the Nebraska Penal and Correctional Complex</u>, 442 U.S. 1 (1979)

11  (employing the term "gravity" of the offense); <u>Ortiz v. Ayers</u>, 2008 WL

12  2051051, at *5 (N.D. Cal. May 13, 2008) (rejecting vagueness challenge

13  to California parole standards); <u>Grewal v. Mendoza-Powers</u>, 2008 WL

14  1734700, at *7-8 (E.D. Cal. Apr. 11, 2008), <u>adopted</u>, 2008 WL 3470234

15  (E.D. Cal. Aug. 12, 2008) (same); <u>McCottrell v. Ayers</u>, 2007 WL

16  4557786, at *9-11 (N.D. Cal. Dec. 21, 2007) (same, and specifically

17  noting subfactors including whether there were multiple victims,

18  whether the victims were abused and whether the offense was carried

19  out in a manner demonstrating an exceptionally callous disregard for

20  human life).

21

22       Petitioner argues that his sentence is unconstitutionally

23  disproportionate to his crime.  This argument is plainly without

24  merit.

25

26       "The Eighth Amendment, which forbids cruel and unusual

27  punishments, contains a 'narrow proportionality principle' that

28  'applies to noncapital sentences.'"  <u>Ewing v. California</u>, 538 U.S. 11,

18

1  20 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991)

2  (Kennedy, J., concurring)).  "The threshold determination in the

3  eighth amendment proportionality analysis is whether [Petitioner's]

4  sentence was one of the rare cases in which a . . . comparison of the

5  crime committed and the sentence imposed leads to an inference of

6  gross disproportionality."  United States v. Bland, 961 F.2d 123, 129

7  (9th Cir. 1992), cert denied, 506 U.S. 858 (1992) (citations and

8  quotations omitted; emphasis added); see also Lockyer v. Andrade, 538

9  U.S. 63, 77 (2003) ("[t]he gross disproportionality principle reserves

10  a constitutional violation for only the extraordinary case"); Rummel

11  v. Estelle, 445 U.S. 263, 272 (1980) ("Outside the context of capital

12  punishment, successful challenges to the proportionality of particular

13  sentences have been exceedingly rare.").

14

15      Any claim of unconstitutional disproportionality would stumble at

16  this threshold level.  A comparison of Petitioner's crime and his

17  sentence does not lead to an "inference of gross disproportionality."

18  See, e.g., Harris v. Wright, 93 F.3d 581, 585 (9th Cir. 1996)

19  (sentence of life imprisonment even without parole "raises no issue of

20  disproportionality when imposed on a murder").

21

22      Courts have upheld even more severe sentences for crimes far less

23  heinous than Petitioner's crime.  See Harmelin (life without

24  possibility of parole for possession of 672 grams of cocaine); United

25  States v. Van Winrow, 951 F.2d 1069, 1071 (9th Cir. 1991) (life

26  without possibility of parole for possession of cocaine with intent to

27  distribute); Terrebonne v. Butler, 848 F.2d 500, 507 (5th Cir. 1988),

28  cert. denied, 489 U.S. 1020 (1989) (life without possibility of parole

1  for 21-year-old heroin addict who delivered packets of heroin to an

2  undercover officer); Holley v. Smith, 792 F.2d 1046, 1051-52 (11th

3  Cir. 1986), cert. denied, 481 U.S. 1020 (1987) (life without

4  possibility of parole for recidivistic robber).

5

6     The Andrade decision also forecloses Petitioner's Eighth

7  Amendment claim.  In Andrade, the Supreme Court acknowledged: "in

8  determining whether a particular sentence for a term of years can

9  violate the Eighth Amendment, we have not established a clear or

10  consistent path for courts to follow."  Lockyer v. Andrade, 538 U.S.

11  at 72.  Because of this lack of clarity, the Andrade Court found not

12  unreasonable a California court's affirmance of a sentence of 25 years

13  to life for petty theft with a prior theft-related conviction.  Id.

14  The same lack of clarity would prevent this Court from concluding that

15  the California courts' refusal to interfere with Petitioner's sentence

16  was "contrary to" or an "unreasonable application of" "clearly

17  established Federal law as determined by the Supreme Court of the

18  United States."  See 28 U.S.C. § 2254(d).

19

20     Petitioner argues that the Board's repeated denials of parole

21  improperly have converted Petitioner's sentence of life with the

22  possibility of parole into a sentence of life without the possibility

23  of parole.  This argument must be rejected.  "So long as a decision by

24  the [Board] finding petitioner unsuitable is supported by some

25  evidence, this court cannot find that petitioner's sentence has been

26  effectively commuted to life without the possibility of parole."

27  Grafton v. Jacquez, 2007 WL 3225467 *7 (E.D. Cal. Oct. 30, 2007),

28  adopted, 2007 WL 2781752 (E.D. Cal. Dec. 18, 2007); see Kunkler v.

1  Muntz, 226 Fed. App'x 669, at *1-2 (9th Cir. 2007) (rejecting similar

2  argument); Campbell v. Hernandez, 2008 WL 398859 *14-15 (S.D. Cal.

3  Feb. 11, 2008) (rejecting similar argument).

4

5       Finally, Petitioner argues that the evidence does not support the

6  Board's denial of parole for a three-year period.  This argument also

7  must be rejected.  Section 3041.5(b)(2)(B) of the California Penal

8  Code permits the Board to deny parole hearings for murderers for up to

9  five years if the Board determines that it is not reasonable to expect

10 that parole would be granted at a hearing in the interim and states

11 the reasons for this determination in writing.  The Board stated its

12 reasons for the determination in writing, and "some evidence" supports

13 the Board's reasoning.  See Sesma v. Hernandez, 2007 WL 3243853, at

14 *14 (S.D. Cal. Oct. 30, 2007) (Board may issue a multi-year denial

15 based on the same factors supporting the determination of

16 unsuitability); see also Cobos v. Mendoza-Powers, 2008 WL 719225 at

17 *7-8 (E.D. Cal. Mar. 17, 2008), adopted, 2008 WL 1930315 (E.D. Cal.

18 May 1, 2008) (apparently rejecting the petitioner's argument that it

19 is improper for the Board to base a three-year denial on the same

20 factors on which the Board based its finding of unsuitability).

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1          **RECOMMENDATION**

2

3   For all of the foregoing reasons, IT IS RECOMMENDED that the

4 Court issue an Order: (1) approving and adopting this Report and

5 Recommendation; and (2) directing that Judgment be entered denying and

6 dismissing the Petition with prejudice.

7

8     DATED:   September 3, 2008.

9

10             _____/S/_____

11              CHARLES F. EICK
             UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.